Raymond Gilmore **MARTEL**, Appellant,

v.

**STATE** of Alaska, Appellee.

No. 1712.

Supreme Court of Alaska.

July 9, 1973.

Stephen C. Cowper, Fairbanks, for appellant.

John E. Havelock, Atty. Gen., Juneau, Monroe N. Clayton, Dist. Atty., and Robert B. Downes, Asst. Dist. Atty., Fairbanks, for appellee.

Before RABINOWITZ, C. J., and CONNOR, ERWIN, BOOCHEVER and FITZGERALD, JJ.

PER CURIAM.

Appellant Martel was hospitalized as a result of a shooting incident at Ester, Alaska where he and the complaining witness exchanged gunfire. A search of appellant's home and unattached garage pursuant to a search warrant for the revolver he used revealed an air compressor which subsequently led to Martel's conviction for concealing stolen property and which is the subject of the present appeal.

Martel challenges the sufficiency of the affidavit to obtain the search warrant. In addition, he challenges the admissibility of a statement taken at the hospital six days after the shooting on the grounds it was the result of two previous statements which the trial court ruled inadmissible because of appellant's physical condition at the time they were given.

■ We have examined the affidavit for a search warrant and find it legally sufficient.[1] We have also reviewed the

---

1. Davenport v. State, 510 P.2d 78 (Alaska 1973); Davis v. State, 499 P.2d 1025 (Alaska 1972). We disagree with the dissenting opinion's conclusion that there was no probable cause to support that part of the search warrant authorizing

circumstances leading up to the taking of the statement by the state police trooper six days after Martel's hospitalization. We conclude that the statement was both voluntary [2] and untainted by the exclusions of previous statements made on the day of the shooting incident and some three days later.[3]

■ Appellant additionally urges the court to adopt the standard that the trial court must find the statement was voluntary beyond a reasonable doubt [4] before it was admissible. Since appellant did not raise such an issue in the trial court, we decline to consider it for the first time on appeal.

The judgment and conviction of the trial court is affirmed.

FITZGERALD, Justice (dissenting).

I do not agree that the affidavit on which the initial search warrant in this

---

the search of the unattached garage. The affidavit was based in part upon the statement of Robert E. Reichmann that he observed Martel point a gun at Daniel Knutsen in front of Martel's residence. The affidavit was also based upon the statement of Daniel Knutsen that "Martel did point a revolver at Knutsen while inside Reichmann's car and fire it. . . ." The affidavit noted that a subsequent investigation by the police revealed a bullet hole in Reichmann's vehicle. The dissent grants that there was probable cause to search Martel's residence but would hold there was no probable cause to search his garage. We disagree and feel if Martel attempted to conceal the revolver it is as logical to believe he would hide it in the garage as in his residence.

The state concedes that the affidavit was not legally sufficient to support a search for a shotgun not related to the shooting incident where Martel was injured. A shotgun was apparently used in a related incident which took place the day before and which caused damage to a car parked at the same site as the scene of the shooting. The reference to the other incident is contained in the affidavit in sketchy terms but there are no facts related which indicate whether Martel fired the shotgun at the damaged car. The search warrant permitted the officers to search for a shotgun as well as the handguns used in the shootout which led to Martel's hospitalization.

2. There is no evidence of overbearing by the state police trooper. The first interview took place on the night Martel was admitted to the hospital when the trooper was attempting to ascertain the events which culminated in the shooting and before the trooper had obtained a search warrant for the garage where the air compressor was found. Martel was not given a *Miranda* warning but he was not a suspect at that time for concealing stolen property and the questioning lasted less than 10 minutes. The second interview was of similar duration and took place at the hospital three days later. Martel was given a *Miranda* warning but the trooper left after Martel indicated he did not wish to discuss the matter because he did not feel well. The trial court excluded the conversations on each occasion because of Martel's physical condition and the medication he had been given. The trial court ruled that the statement at the third interview was voluntary and that Martel's physical condition was sufficiently improved so that it did not constitute the same problem it had at each of the first two interviews.

3. While appellant contends the three statements are obviously interrelated, we have difficulty with this allegation. The first two statements related that Martel knew the compressor was in the garage near his house and that he had purchased it from a soldier. The state police trooper knew the compressor was stolen because of police reports, and had found the compressor in Martel's garage. The third statement was the first indication that Martel knew the compressor was stolen. *E. g.* Boulden v. Holman, 394 U.S. 478, 480–481, 89 S.Ct. 1138, 22 L.Ed.2d 433, 437 (1969); United States v. Knight, 395 F.2d 971 (2d Cir. 1968), cert. denied 395 U.S. 930, 89 S.Ct. 1776, 23 L.Ed. 2d 249 (1969); Nobles v. United States, 391 F.2d 602, 603 (5th Cir. 1968); Myers v. Frye, 401 F.2d 18, 22 (7th Cir. 1968), appeal after remand, 436 F.2d 579 (7th Cir. 1971); Cotton v. United States, 371 F.2d 385, 392 (9th Cir. 1967); United States ex rel. Gockley v. Myers, 314 F.Supp. 839, 843–45 (D.C.Pa. 1970) reversed on other grounds, 450 F. 2d 232 (3rd Cir. 1971), cert. denied 404 U.S. 1063, 92 S.Ct. 738, 30 L.Ed.2d 752 (1972); Soolook v. State, 447 P.2d 55, 62 (Alaska 1968). For a discussion of the fruit of the poisonous tree doctrine, *see* Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407 9 L.Ed.2d 441 (1963).

4. Cf. Lego v. Twomey, 404 U.S. 477, 489, 92 S.Ct. 619, 30 L.Ed.2d 618, 627 (1972).

case was issued was sufficient to establish probable cause that appellant had concealed firearms, including a shotgun and a revolver, in an unattached garage 30 feet from appellant's dwelling house.

The search warrant affidavit was made by Corporal Turner of the Alaska State Police. It stated that the officer had reason to believe that on the premises, described as a "wooden frame residence occupied by . . . Martel" and "an unattached garage located approximately 30 feet west of the main structure" with a "keep out" sign on the door, two or more weapons, one a revolver and the other a shotgun, would be found. The weapons were said to have been used by Martel on October 25, 1971 in the commission of several felonies: assault with a dangerous weapon, felon in possession of a firearm, and malicious destruction of property.

The affidavit recited that one R. E. Reichmann had stated that on October 25th, he discovered his car had been damaged by a shotgun while it was parked in front of the residence of one Daniel Knutsen. Reichmann was said to have further stated that he recently had a serious argument with Martel over money, and that on the evening of October 25th had observed Martel pointing a gun at Knutsen while in front of Martel's residence. The affidavit included a further statement from Daniel Knutsen that Martel had pointed and fired a revolver at Knutsen while the latter was inside Reichmann's car. Finally, the affidavit stated that investigation by the police revealed that the damage to Reichmann's vehicle was probably caused by several shotgun blasts, that a bullet hole was found in the seat of the vehicle, and that a spent projectile was recovered therefrom.

The fourth amendment to the United States Constitution protects against unreasonable searches, not only of "houses" or dwelling places, but also of outbuildings or other structures located within the curtilage of a dwelling house. Care v. United States.[1] And while a single search warrant may authorize a search of more than one building, the warrant must specifically describe[2] each place to be searched and must adequately establish probable cause[3]

---

[1]. 231 F.2d 22 (10th Cir.), cert. denied, 351 U.S. 932, 76 S.Ct. 788, 100 L.Ed. 1461 (1956): *see also* Walker v. United States, 225 F.2d 447 (5th Cir. 1955).

[2]. The description of the premises in the initial search warrant authorizing the search of Martel's residence and garage was adequate and poses no difficulty in the instant case.

[3]. While probable cause does not require proof beyond a reasonable doubt, there must be something more than a bare suspicion. As the United States Supreme Court stated in Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949):

In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. The standard of proof is accordingly correlative to what must be proved.

'The substance of all the definitions' of probable cause 'is a reasonable ground for belief of guilt.' * * * And this 'means less than evidence which would justify condemnation' or conviction as Marshall, Ch. J., said for the Court more than a century ago. * * * Since Marshall's time, at any rate, it has come to mean more than bare suspicion: Probable cause exists where 'the facts and circumstances within their [officers'] knowledge, and of which they had reasonably trustworthy information, [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed. * * *

These long-prevailing standards seek to safeguard citizens from rash and unreasonable interferences with privacy and from unfounded charges of crime. They also seek to give fair leeway for enforcing the law in the community's protection. *Id.* at 175–176, 60 S.Ct. at 1310–1311, 93 L.Ed. at 1890 (Footnotes and citations omitted).

for the search of each structure. United States v. Hinton.[4]

Here the affidavit offered no direct evidence to indicate that the firearms would be found in either Martel's residence or the garage. Thus, it must be examined in order to determine what inferences may be reasonably drawn from the known facts and circumstances to establish probable cause that the weapons might be found in the unattached garage. In my view it seems reasonable to assume that a person will tend to keep a revolver close at hand in one's residence, since firearms are relatively expensive articles. Further, Martel was observed to be standing in front of his residence with a gun. One reasonable inference to be drawn from the foregoing assumption and fact is that Martel probably entered his house, carrying the weapon into the dwelling with him. Thus, there was probable cause to believe that the weapon or weapons might have been found in Martel's residence.

The affidavit, however, gives rise to no reasonable inference that the weapons were hidden or concealed in the unattached garage. There is simply nothing in the affidavit which in any way connects the weapons with the garage. Yet the majority concludes that because Martel was observed to be standing in front of his residence with a gun, a search may be made of the unattached garage. In my opinion the majority's conclusion is too broad. For under the court's analysis, there can be no logical reason to restrict the search from any other outbuilding or area of Martel's premises; any property in which Martel possesses a proprietary interest may be searched. I decline to join in the court's broad holding.

For the reasons discussed I conclude that Corporal Turner's affidavit failed to establish adequate probable cause for the search of the garage. That being so, the initial search of Martel's garage was unconstitu-

tional. Since the second search resulted from the observation of the air compressor made during the first search, the second search was also invalid and the evidence obtained therefrom was inadmissible as "fruits of the poisonous tree."[5] Without the compressor, there is insufficient evidence to support the conviction for the crime of concealing stolen property. Hence, I would reverse the conviction.

---

4. 219 F.2d 324 (7th Cir. 1955).

5. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).