Willie B. BELL, Appellant,

v.

STATE of Alaska, Appellee.

No. 5821.

Court of Appeals of Alaska.

Sept. 9, 1983.

Christine Schleuss, Asst. Public Defender, Dana Fabe, Public Defender, Anchorage, for appellant.

W.H. Hawley, Jr., Asst. Atty. Gen., Anchorage, Wilson L. Condon, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

BRYNER, Chief Judge.

Willie B. Bell appeals his convictions for promoting prostitution in the first degree in violation of AS 11.66.110(a)(2) and managing a prostitution enterprise in violation of AS 11.66.120(a)(1). He also appeals the sentence imposed. We affirm.

Bell was a twenty-nine-year-old army sergeant when he procured two sixteen-year-old girls, C.R. and M.J., and one fourteen-year-old girl, D.W., for prostitution. C.R. began living with Bell and engaging in prostitution after Bell promised to marry her and to buy her a new car and new clothing. At Bell's direction, D.W. and M.J. worked as prostitutes in May, 1980. On May 22, 1980, Bell assaulted M.J., claiming that she had been drinking instead of "working." Fearing that Bell would harm them, C.R. and M.J. left him and contacted police, who obtained a search warrant to record conversations between M.J., C.R. and Bell. A telephone conversation between Bell and C.R. and a conversation involving Bell, M.J. and C.R. were recorded pursuant

to the warrant and used as evidence against Bell.

The indictment returned against Bell charged two counts of promoting prostitution in the first degree, alleging that he induced D.W. to engage in prostitution when she was under the age of sixteen (Count I) (AS 11.66.110(a)(2)), and that he induced C.R. to engage in prostitution by means of force (Count II) (AS 11.66.-110(a)(1)). Count III of the indictment, as it went to the jury, alleged that Bell was guilty of attempted promotion of prostitution in the first degree, AS 11.66.110(a)(1) and AS 11.31.100(a), regarding M.J. The indictment also alleged that Bell managed, supervised, controlled or owned a prostitution enterprise other than a house of prostitution in violation of AS 11.66.120(a)(1) (Count IV). Bell was convicted of Counts I and IV. On Count II, Bell was acquitted of the charge but convicted of the lesser-included offense of promoting prostitution in the third degree, AS 11.66.130. On Count III, Bell was found not guilty of the charge but guilty of the lesser-included offense of attempted promotion of prostitution in the third degree, AS 11.66.130 and 11.31.100(a). Bell was not sentenced on Counts II and III. Superior Court Judge Milton M. Souter sentenced Bell to a five-year term with two years suspended on Count I, and a four-year term with three years suspended on Count IV. The sentences for these offenses were to run concurrently. Subse-

quently, Judge Souter refused to reduce the sentence.

On appeal, Bell argues that: (1) he should have been allowed to present a reasonable mistake of age defense to the charge contained in Count I; (2) a partially inaudible tape recording should not have been admitted into evidence; (3) the search warrant for recording of conversations was improperly issued and executed; (4) supplemental instructions given to the jury were unduly coercive; (5) the sentences imposed by the trial court violated his double jeopardy rights; and (6) Judge Souter gave improper consideration to a letter Bell wrote, while awaiting sentencing, to the fourteen-year-old daughter of another inmate.

## I. MISTAKE OF AGE

Bell asserts that the trial court erred in refusing to give a proposed jury instruction providing for a reasonable mistake of age defense to the charge of inducing a person under the age of sixteen to engage in prostitution in violation of AS 11.66.-110(a)(2).[1] Bell argues that AS 11.66.110(b) violates his due process rights under the United States and Alaska constitutions by expressly precluding mistake of age as a defense to the charge of violating AS 11.-66.110(a)(2). We find this argument unpersuasive and conclude that the legislature may, consistent with the requirements of constitutional due process, preclude mistake of age from constituting a defense to the

---

1. AS 11.66.110 provides:

PROMOTING PROSTITUTION IN THE FIRST DEGREE.

(a) A person commits the crime of promoting prostitution in the first degree if he

(1) induces or causes a person to engage in prostitution through the use of force;

(2) as other than a patron of a prostitute, induces or causes a person under 16 years of age to engage in prostitution; or

(3) induces or causes a person in his legal custody to engage in prostitution.

(b) In a prosecution under (a)(2) of this section, it is not a defense that the defendant reasonably believed that the person he induced or caused to engage in prostitution was 16 years of age or older.

(c) Promoting prostitution in the first degree is a class B felony.

The jury was instructed on the elements of this offense. The court then instructed that:

It is not a defense to the crime charged in Count I of the Indictment that the defendant reasonably believed that the person he induced or caused to engage in prostitution was 16 years of age or older.

The instruction proposed by Bell stated:

It is a defense to Count I of the indictment, Inducing a Person Under 16 Years of Age to Engage in Prostitution, that the defendant reasonably and in good faith believed that the female person was of the age of sixteen years or older, even though, in fact, she was under the age of sixteen years. If from all the evidence you have a reasonable doubt as to the question whether defendant reasonably and in good faith believed that she was sixteen years of age or older, you must give the defendant the benefit of that doubt and find him not guilty.

crime of promoting prostitution in the first degree.

It is apparent that the legislature considered procurement of a person under sixteen to be an aggravated form of promoting prostitution. The commentary to the Revised Criminal Code, 2 Senate Journal, Supplement No. 47, at 109 (1978), states that by denying a defendant the defense of reasonable mistake as to age, creation of strict liability was intended as to the element of the offense involving age of the victim.[2] Supporting the validity of the legislature's decision in this regard is the supreme court's opinion in *Hentzner v. State,* 613 P.2d 821 (Alaska 1980), in which the court held:

> Where a crime involved may be said to be *malum in se,* that is, one which reasoning members of society regard as condemnable, awareness of the commission of the act necessarily carries with it an awareness of wrongdoing. In such a case the requirement of criminal intent is met on proof of conscious action, and it would be entirely acceptable to define the word "wilfully" to mean no more than a consciousness of the conduct in question.

*Id.* at 826. *See also Wheeler v. State,* 659 P.2d 1241, 1254 n. 18 (Alaska App.1983).

■ Bell correctly states the well-recognized rule in this jurisdiction that criminal intent is a necessary ingredient of criminal liability and that one charged with criminal conduct must have an awareness or consciousness of wrongdoing. *Speidel v. State,* 460 P.2d 77, 78 (Alaska 1969). In *Speidel,* the awareness of wrongdoing was in the context of a larceny-type crime, for which courts have historically required a specific intent to wrongfully deprive. In *Alex v. State,* 484 P.2d 677 (Alaska 1971), the su-preme court discussed the intent required for non-larceny crimes:

> However, as applied to crimes generally, what is imperative, is that an accused's act be other than simply inadvertent or neglectful. What is essential is not an awareness that a given conduct is a "wrongdoing" in the sense that it is proscribed by law, but rather, an awareness that one is committing the specific acts which are defined by law as a "wrongdoing." It is, however, no defense that one was not aware that his acts were wrong in the sense that they were proscribed by law. So long as one acts intentionally, with cognizance of his behavior, he acts with the requisite awareness of wrongdoing.

*Id.* at 681–82.[3]

■ We believe this language is applicable to Bell's actions, since he was consciously committing the acts proscribed by law. As an element of this offense, Bell was required to be aware that he was procuring women to engage in acts of prostitution. Indeed, the jurors in this case were instructed that they must be convinced beyond a reasonable doubt

> that the defendant engaged in conduct which caused or induced [D.W.] to engage in prostitution; [and] that the defendant engaged in said conduct with the specific intent to cause or induce [D.W.] to engage in prostitution.

Thus, while Bell was not required to know the age of those whom he procured, this is not to say that the offense did not require *mens rea* or a culpable mental state.

We also note that AS 11.66.110(b) is in accord with the common law view that there should be no exculpation for mistake where, if the facts had been as the actor believed them to be, his conduct would still be illegal or immoral.[4] As Bell recognizes

---

**2.** *See also* Alaska Criminal Code Revision Part 4, at 103 (Tent. Draft 1977) (Commentary to AS 11.66.140).

**3.** *See also State v. Rice,* 626 P.2d 104, 115 (Alaska 1981) (Matthews, J., concurring) (a statute prohibiting the transportation of illegally taken game was overbroad, because it included "within its ambit the conduct of people who have no reason to believe that what they are doing is criminal").

**4.** In the landmark case of *Regina v. Prince,* L.4., 2 Cr.Cas.Res. 154 (1875), the defendant was convicted of taking a girl under sixteen years of age from under the care of her father, even though the defendant reasonably believed she was older. The defense of mistake of age

on appeal, his conduct would still have been illegal even if D.W. had been sixteen or over. AS 11.66.130(a)(2).[5] Moreover, although it might be arguable that the offense of prostitution should be considered a *malum prohibitum* crime, we think it manifest that *promoting* prostitution is an offense "which reasoning members of society regard as condemnable," and thus, is *malum in se*. *Hentzner v. State*, 613 P.2d at 826. Accordingly, there can be little doubt that *Hentzner*'s basic requirement of an awareness or consciousness of wrongdoing is satisfied, despite the fact that AS 11.66.110(b) precludes mistake of age as a defense to the offense of promoting prostitution in the first degree.

In continuing to press his claim that AS 11.66.110(b) imposes an unconstitutional standard, Bell relies upon *State v. Guest*, 583 P.2d 836 (Alaska 1978), in which the supreme court upheld a trial court's decision to instruct the jury on a defense of reasonable mistake of age in a statutory rape case. Following the reasoning of *Speidel* and *Alex*, the court stated that an intent requirement must be read into former AS 11.15.120 to save it from unconstitutionality. To refuse a defense of mistake of age in a statutory rape case, according to the *Guest* court, would be to impose significant criminal liability without any criminal mental element. *Id.* at 839.

Bell relies most heavily upon the following language in *Guest:*

It has been urged in other jurisdictions that where an offender is aware he is committing an act of fornication he therefore has sufficient criminal intent to justify a conviction for statutory rape because what was done would have been unlawful under the facts as he thought them to be. We reject this view. While was disallowed on the ground that removal of an unmarried girl from the lawful custody of her parents would have been a crime even had she been as old as he believed. Hence, the defendant acted at his peril.

it is true that under such circumstances a mistake of fact does not serve as a complete defense, we believe that it should serve to reduce the offense to that which the offender would have been guilty of had he not been mistaken. Thus, if an accused had a reasonable belief that the person with whom he had sexual intercourse was sixteen years of age or older, he may not be convicted of statutory rape. If, however, he did not have a reasonable belief that the victim was eighteen years of age or older, he may still be criminally liable for contribution to the delinquency of a minor.

*Id.* (citations and footnotes omitted). The court cited in support of its position section 2.04(2) of the Model Penal Code (Proposed Official Draft 1962), which provides:

Although ignorance or mistake would otherwise afford a defense to the offense charged, the defense is not available if the defendant would be guilty of another offense had the situation been as he supposed. In such case, however, the ignorance or mistake of the defendant shall reduce the grade and degree of the offense of which he may be convicted to those of the offense of which he would be guilty had the situation been as he supposed.

■ We believe the problem addressed in *Guest* is distinguishable from the issue at hand. As we have stated, Bell did not lack criminal intent; he intended to promote prostitution. *See Hentzner v. State*, 613 P.2d at 826; *Wheeler v. State*, 659 P.2d at 1251. The court in *Guest* was careful to point out that fornication was not itself a crime, so that it could not have been considered as a lesser-included offense of statutory rape. Also, although the court went on to observe that Guest *might* still have

(2) as other than a patron of a prostitute, induces or causes a person 16 years of age or older to engage in prostitution . . . .
(b) Promoting prostitution in the third degree is a class A misdemeanor.

**5.** AS 11.66.130 provides, in relevant part:
(a) A person commits the crime of promoting prostitution in the third degree if, with intent to promote prostitution, he . . .

.

been guilty of contributing to the delinquency of a minor under former AS 11.40.-130 if he did not have a reasonable belief that his partner was under eighteen, it is clear that Bell was *necessarily* guilty of promoting prostitution in the third degree if the facts were as he supposed them to be.

This distinction is supported by analysis of other authorities. The revised criminal code contains no provision paralleling the second sentence of MPC § 2.04(2), quoted by the *Guest* court. Instead, AS 11.81.-600(b)(2) provides:

> (b) A person is not guilty of an offense unless he acts with a culpable mental state with respect to each element of the offense, except that no culpable mental state must be proved
>
> (2) *if an intent to dispense with the culpable mental state requirement for that element clearly appears.*

(Emphasis added.) AS 11.66.110(b), by proscribing any defense to AS 11.66.110(a)(2) based upon mistake of age, clearly demonstrates a legislative intent to dispense with knowledge of age.

More importantly, despite the language of MPC § 204(2), the Model Penal Code takes essentially the same approach as the Revised Code to in its treatment of criminal intent for the offense of promoting prostitution. MPC § 251.2(2) (1980) makes the conduct proscribed by AS 11.66.130(a)(2)—promoting prostitution in the third degree—a misdemeanor, while § 251.2(3)(c) provides that the same conduct shall be a felony if "the actor promotes prostitution of a child under 16, *whether or not he is aware of the child's age.*" Similarly, New York Penal Law § 230.30 (1978), from which AS 11.66.110 appears to be derived, provides that it shall be a felony to "knowingly" advance or profit from the prostitution of a person less than sixteen years old, while New York Penal Law § 15.20(3) (1967) provides that

> Notwithstanding the use of the term "knowingly" in any provision of this chapter defining an offense in which the age of a child is an element thereof,

knowledge by the defendant of the age of such child is not an element of any such offense and it is not, unless expressly so provided, a defense to a prosecution therefor that the defendant did not know the age of the child or believed such age to be the same as or greater than that specified in the statute.

We find it highly persuasive that these statutory schemes are, when applied to the precise conduct engaged in by Bell, in consonance with the approach taken in the Revised Code.

■■■ Under the Revised Alaska Criminal Code, it is Bell's intentional procurement of a person under the age of sixteen years for prostitution that renders him liable for first-degree promoting, regardless of his actual awareness of that person's age. The act of procuring another for purposes of prostitution is *malum in se,* without regard to the age of the person procured, and thus, as we have indicated, in a prosecution for procuring a person under the age of sixteen years, the intent to procure satisfies the minimal constitutional requirement of criminal intent. *Hentzner v. State,* 613 P.2d at 826. We hold that AS 11.66.110(b), which expressly dispenses with mistake of age as a defense to promoting prostitution in the first degree, does not violate due process of law. We therefore conclude that the trial court did not err in rejecting Bell's challenge to the instruction on mistake of age.

## II. PARTIALLY INAUDIBLE TAPE

Bell argues that error occurred when a recording of a telephone conversation between Bell and C.R. was played for the jury. At trial, Bell's attorney objected to admission of the recorded telephone conversation, contending that parts of the tape were substantially inaudible. The tape of another conversation was played without objection. Before this tape was played, the trial judge gave a cautionary instruction

admonishing the jury to consider only what it actually heard on both tapes.[6]

█ The trial court's decision to admit the phone tape is reversible error only if it constituted an abuse of discretion. *Robinson v. State,* 593 P.2d 621, 624 n. 5 (Alaska 1979). In *Dana v. State,* 623 P.2d 348 (Alaska App.1981), we considered the correctness of the trial court's admission of a tape which had "significant gaps" due to equipment failure. We held that there could be no abuse of discretion in admitting the flawed tape unless its prejudicial impact outweighed its probative value. *Id.* at 353–54.

█ In the present case, after weighing the possibility of prejudice against the probative value of the tape, and taking into account the other evidence at trial, the cautionary instruction, and the fact that most of the tape is audible, we conclude that Judge Souter did not abuse his discretion in admitting the tape.

### III. ISSUANCE AND EXECUTION OF THE GLASS WARRANT

█ Bell argues that procedures outlined in the federal electronic surveillance act should supplement the requirements, enumerated in *State v. Glass,* 583 P.2d 872 (Alaska 1978), that must be met before electronic monitoring of conversations is permitted. We considered and rejected a similar argument in *Jones v. State,* 646 P.2d 243, 248 (Alaska App.1982). *See also Gallagher v. State,* 651 P.2d 1185, 1187 (Alaska App.1982). Our holdings in *Jones* and *Gallagher* are dispositive of this issue.

Bell also contends that probable cause for the issuance of a *Glass* warrant did not exist because it was not known whether relevant conversations would occur between Bell, M.J. and C.R., and because M.J. and C.R. were neither reliable nor credible. Bell's motion to suppress on this ground was denied at the omnibus hearing.

█ The judge's determination that probable cause existed is entitled to great deference by this court. *Spinelli v. United States,* 393 U.S. 410, 419, 89 S.Ct. 584, 590–91, 21 L.Ed.2d 637, 645 (1969). We find ample facts to support issuance of the search warrant. C.R. and M.J. stopped working for Bell less than a week before they testified at the proceeding to issue the *Glass* warrant. Since C.R. had worked for Bell for nearly six months and given him $5,000 of the money she made by prostitution, it was logical to assume she could contact him and that he would have some interest in talking to her. Although M.J. had worked for Bell for only a few weeks, the same reasoning applies. We believe the court correctly found that sufficient probable cause existed to issue the *Glass* warrant. *United States v. Ventresca,* 380 U.S. 102, 108, 85 S.Ct. 741, 745–46, 13 L.Ed.2d 684, 689 (1965); *Martel v. State,* 511 P.2d 1055, 1055 n. 1 (Alaska 1973); *Rosa v. State,* 633 P.2d 1027, 1029–30 (Alaska App.1981).

█ Bell, relying on *Spinelli v. United States,* and *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), additionally contends that the search warrant should not have been issued because C.R. and M.J. were neither reliable nor credible. Bell's reliance on the rulings in *Aguilar* and *Spinelli* is misplaced, because those cases set forth criteria for ascertaining the reliability and credibility of informants who have provided hearsay information. Neither C.R. nor M.J. was a confidential informant; both testified personally and were under oath at the time. The magistrate thus had ample opportunity to assess their credibility. Accordingly, the *Aguilar-Spinelli* standards do not apply in this case, and Bell's argument is without merit.

Next, Bell argues that the recordings should have been suppressed because the police failed to comply with Alaska Rule of Criminal Procedure 37(b)(2), and because the police failed to mail a copy of the war-

---

**6.** The jury was instructed:
   [I] want to admonish the jury that there are portions of these tapes that are impossible to hear .... Consider only what you hear, only what you actually hear on the

tapes, together with any other evidence .... But don't speculate what is on the tape where there isn't credible evidence .... The tapes are going to be hard to understand. Don't guess at what's on those tapes.

rant and receipt to Bell in compliance with the provision of the warrant requiring that Criminal Rule 37(b)(1) and (2) be satisfied.[7]

The court ordered that a copy of the warrant and receipt be mailed to Bell within ten days of May 27, 1980, when the warrant was executed. Officer George Novaky stated in an affidavit that, although he did not specifically advise Bell of the recording at the time of Bell's arrest and although Bell was not sent a copy of the search warrant, Novaky included information concerning the recording in police reports made available to Bell on June 16, 1980. Additionally, on June 13, 1980, Bell obtained actual notice of the recording when he appeared at a bail hearing with his attorney. At the bail hearing, Officer Michael Grimes testified that electronic surveillance was used to record Bell's conversation. Bell's attorney then declined to question Grimes, and the tape was played. It is unclear from the record whether Bell received notice of the recording in a copy of Officer Novaky's complaint at the time of his arraignment on May 28, 1980; consequently, we assume that Bell first received notice at the bail hearing on June 13, 1980 —slightly more than two weeks after police recorded Bell's conversations.

■ Under the circumstances, Bell has shown no prejudice stemming from untimely notification of execution of the warrant authorizing his telephone conversation to be monitored and recorded. Nor does it appear that the late notification was the result of bad faith on the part of investigating officers. We hold that the untimely notice to Bell did not justify suppression of the recording made pursuant to the *Glass* warrant. *See Gallagher v. State,* 651 P.2d 1185 (Alaska App.1982).

## IV. COERCIVE INSTRUCTION DURING DELIBERATIONS

■ Bell argues that a supplemental instruction issued by Judge Souter was coercive and that it was essentially an "*Allen* charge."[8] We disagree. During deliberations, the jury sent a note to the judge inquiring if inability to agree on one count of the indictment constituted a hung jury. The judge replied:

> If you were to be unable to agree to a verdict on one Count of the Indictment, you would be a hung jury as to that one Count, but you would not be a hung jury as to the remaining Counts unless you were also unable to agree to your verdicts on them also. *In my opinion you have not deliberated long enough yet to be able to validly reach the conclusion that you cannot agree to a verdict on any one or more Counts of the Indictment.* [Emphasis added.]

The jury subsequently returned its verdicts on the four counts, as well as the two lesser-included offenses.

The Alaska Supreme Court proscribed *Allen* charges in *Fields v. State,* 487 P.2d 831, 836 (Alaska 1971). In *Fields,* the jury was instructed, after extensive deliberations and at least two prior communications indicating a deadlock, that it was required to continue deliberations until a unanimous verdict was reached. This instruction was found to be so coercive as to require reversal of the conviction. We find that Judge Souter's instruction lacked the coerciveness proscribed by *Fields.* We note in this regard that Standard 15–4.4(b) of the ABA Standards Relating to Trial by Jury specifically provides that a court may require continued deliberations if a jury is unable to agree.[9] In this case, the jury had not delib-

7. Alaska R.Crim.P. 37 provides, in pertinent part:
   (b) *Execution and Return With Inventory.* The warrant shall be executed and returned within 10 days after its date. The officer taking property under the warrant
   (1) shall give to the person from whom or from whose premises the property was taken a copy of the warrant, a copy of the supporting affidavits, and receipt for the property taken, or ·

(2) shall leave the copies and the receipt at the place from which the property was taken
   . . . .

8. *Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896).

9. ABA Standard Relating to Trial by Jury § 15–4.4(b) (1980) provides:
   If it appears to the court that the jury has been unable to agree, the court may require

erated for an extended time, the communication did not unequivocally indicate a deadlock, and the court's instruction did not imply that the jury would be required to deliberate until unanimity was reached. Under these circumstances the supplemental instruction did not constitute an abuse of discretion and Bell's argument must fail.

## V. DOUBLE JEOPARDY

Bell additionally argues that his sentences on Count I [10] and Count IV [11] violate double jeopardy under *Whitton v. State,* 479 P.2d 302 (Alaska 1970). The *Whitton* court adopted the following analysis to determine whether or not a double jeopardy violation had occurred:

The trial judge first would compare the different statutes in question, as they apply to the facts of the case, to determine whether there were involved differences in intent or conduct. He would then judge any such differences he found in light of the basic interests of society to be vindicated or protected, and decide whether those differences were substantial or significant enough to warrant multiple punishments . . . .

If such differences in intent or conduct are significant or substantial in relation to the social interests involved, multiple sentences may be imposed, and the constitutional prohibition against double jeopardy will not be violated. But if there are no such differences, or if they are insignificant or insubstantial, then only

one sentence may be imposed under double jeopardy.

*Id.* at 312 (footnotes omitted).

We must therefore compare AS 11.66.-110(a)(2) and AS 11.66.120(a)(1) as applied to the facts of Bell's case, to determine whether differences in intent or conduct were involved in this case. Then, if there are differences, we must decide whether, in light of the societal interests to be protected, the differences were so substantial as to warrant multiple punishment.

AS 11.66.110(a)(2) proscribes the conduct of inducing or causing a person under the age of sixteen to engage in prostitution. AS 11.66.120(a)(1) prohibits managing, supervising, controlling or owning a prostitution enterprise. We believe that, under the *Whitton* analysis, the offenses proscribed by the two statutes in question involve different intents and different conducts. Bell's conviction on Count I was based squarely upon his inducement of D.W. Bell's conviction under AS 11.66.-120(a)(1), on the other hand, required proof of management of a prostitution enterprise. No showing of inducement is necessary to establish the offense, since a prostitution enterprise can be comprised entirely of persons who willingly take part in the business, without inducement or promotion. Clearly Bell's conduct in arranging for two or more people to provide sexual services for a fee, a part of which would accrue to him, goes beyond the act of inducing a single person under the age of sixteen to engage in pros-

---

the jury to continue their deliberations and may give or repeat an instruction as provided in paragraph (a). The court shall not require or threaten to require the jury to deliberate for an unreasonable length of time or for unreasonable intervals.

The Commentary to Standard 15–4.4(b) states:
This paragraph confirms that a trial judge may send the jury back for further deliberations notwithstanding its indication that it has been unable to agree. . . .
. . . .
There is no coercion if a court requires jurors to deliberate a reasonable length of time.

**10.** Bell's conviction on Count I was for inducing or causing a person under 16 years of age [D.W.] to engage in prostitution, AS 11.66.-110(a)(2). *See supra* n. 1.

**11.** Conviction on count IV was for violating AS 11.66.120(a)(1), a class C felony, which provides:
(a) A person commits the crime of promoting prostitution in the second degree if he
(1) manages, supervises, controls, or owns, either alone or in association with others, a prostitution enterprise other than a place of prostitution . . . .
AS 11.66.150(2) defines a "prostitution enterprise" as
[A]n arrangement in which two or more persons are organized to render sexual conduct in return for a fee.
The jury was instructed in the language of both these statutes.

titution. The finding that Bell managed a prostitution business with at least two women working for him involved the element of management and required proof of an enterprise, neither of which were involved in the inducement charge. We thus conclude that Bell's intent and conduct clearly differed on the two charges.

We must also determine whether such differences in intent or conduct are substantial in relation to the societal interests involved. As we have stated in connection with Bell's mistake of age claim, AS 11.66.-110(a)(2) imposes criminal liability for non-forcible inducement of individuals under sixteen to engage in acts of prostitution with others. This liability is imposed without regard to any pecuniary gain on the part of the offender. We believe that the primary aim of this provision is to protect individuals, particularly those who are young and therefore more vulnerable, from being led into committing acts of prostitution by the efforts of others. By contrast, AS 11.66.120(a)(1) seeks to prevent and punish the commercial aspects of ongoing organized prostitution by subjecting persons who manage prostitution-related activities as business enterprises to sanctions greater than those applicable to persons who commit individual acts of prostitution, without regard to age of the persons managed. We therefore conclude that multiple punishment was appropriate in this case because of the differences in intent and conduct and because of the differing societal interests furthered by the two statutes in question.

## VI. REFUSAL TO REDUCE SENTENCE

Finally, Bell contends that denial of the motion to reduce his sentence was error. While incarcerated prior to sentencing, Bell wrote a letter to L.S., the fourteen-year-old

daughter of a fellow inmate. The letter was produced at the sentencing hearing, and the father of L.S. was called to testify. He stated that Bell had threatened him with violence if he did not testify favorably to Bell. Judge Souter stated that the threats convinced him to increase Bell's sentence by one year. The judge stated that, although the letter could easily be interpreted as an attempt "to strike a sexual relationship" with L.S., he would give Bell the "benefit of the doubt" and not consider it in sentencing him. Later, Bell moved for reconsideration of the sentence, based on discovery of a letter from the father of L.S. to Bell; the letter indicated that the father had committed perjury at Bell's sentencing.[12] A hearing was subsequently held on Bell's motion to reconsider the sentence.

Judge Souter refused to reduce Bell's sentence, reasoning that, in writing to L.S., Bell had been "attempting to arrange for [L.S.] to become a prostitute for him or to be involved with him in a sexual relationship." The original sentence was based on Judge Souter's belief that Bell had threatened L.S.'s father; at that point Judge Souter did not believe that Bell had "propositioned" L.S. On resentencing, Judge Souter changed his reasoning for Bell's sentence; he was persuaded that L.S.'s father had lied, but he was also persuaded that Bell *had* been trying to establish a sexual relationship with the fourteen-year-old L.S.[13]

Bell now claims that, because the trial court did not reduce his sentence after finding that Bell had not threatened L.S.'s father, double jeopardy was violated. However, he fails to cite any authority supporting his theory that failure to reduce a sentence may violate double jeopardy. Judge Souter's reinterpretation of Bell's letter to L.S. in light of the letter from

12. The letter from L.S.'s father, written to Bell prior to his sentencing, contained a postscript which stated, "Tell [L.S.] I love her and when I write I'll tighten it for you. I'll get you a picture 'a pose'."

13. Judge Souter stated:

The court was not persuaded of this fact when the presentation of evidence concluded at the sentencing hearing, but the contents of the postscript [on the letter from L.S.'s father to Bell] have caused the court to re-examine this question and to resolve it contrary to the way it was resolved at the sentencing hearing.

L.S.'s father to Bell was not unreasonable. Nor can we find that Judge Souter abused his discretion in refusing to reduce the original sentence, based on his reinterpretation of the letter. Since there was no increase in the original sentence, no violation of double jeopardy is involved.

Bell also contends that the effective increase in the period of incarceration based upon the letter was not justified under the sentencing goals set forth in *State v. Chaney*, 477 P.2d 441, 442 (Alaska 1970). The fact that Bell attempted to arrange a romantic involvement with a fourteen-year-old girl while he was incarcerated for promoting the prostitution of another girl under the age of sixteen indicates a lack of remorse on Bell's part and a greater need for deterrence of Bell himself; it therefore justifies imposition of a more severe sentence. We conclude that Bell's sentence was not clearly mistaken.

The conviction and sentence are AFFIRMED.