Cary R. ORTBERG, Sr., Appellant,

v.

STATE of Alaska, Appellee.

No. A–1863.

Court of Appeals of Alaska.

March 18, 1988.

1369

Paul E. Malin, Asst. Public Defender, Dana Fabe, Public Defender, Anchorage, for appellant.

Cary R. Ortberg, Sr., pro se.

W.H. Hawley, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Grace Berg Schaible, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

SINGLETON, Judge.

Cary R. Ortberg, Sr., pled no contest and was convicted of criminal mischief in the second degree, a class C felony, in violation of AS 11.46.482(a)(1). He appeals, contending that the statute is unconstitutional on its face, that the trial court erred in refusing to permit him to withdraw his no contest plea, and that his sentence is excessive. We affirm.[1]

---

1. In his *pro se* brief, Ortberg raises a number of additional nonjurisdictional issues. Our decision to affirm Ortberg's *nolo contendere* plea makes it unnecessary for us to address those other issues. *See Cooksey v. State*, 524 P.2d 1251, 1255 (Alaska 1974) (a plea of *nolo contendere* normally waives all nonjurisdictional defects in a case). In this category we include:

(1) Ortberg's contention that he was not guilty of the offense to which he pled because the actual damage he caused to the property could have been repaired for under $500; (2) Ortberg's contention that his conviction of all the offenses joined in the indictment would have constituted double jeopardy; (3) Ortberg's objections to the search warrants; (4) Ortberg's claim

## FACTS

On February 20, 1986, William Quirion, a Nome police officer, responded to a family disturbance call involving his neighbor, Cary R. Ortberg, Sr., the defendant in this case, and Ortberg's minor son, Cary Ortberg, Jr. Quirion attempted to mediate the dispute and pretended to acquiesce in Ortberg's request that his son be taken to juvenile hall. Instead, Quirion called Ortberg's wife at her place of employment and arranged through her for the boy to stay with a relative.

In the meantime, Ortberg re-entered his house and armed himself with his .12 gauge double-barreled, side-by-side shotgun. He told a second Ortberg child, seventeen-year-old Harvey, to get a string and rag to clean the shotgun in anticipation of Ortberg's shooting it. Harvey asked his father what he was going to do with the shotgun. Ortberg said he was "going to blow out [Quirion's] windows." Harvey unsuccessfully tried to persuade his father not to shoot out the windows. Ortberg left the house with a shotgun, and shortly afterwards Harvey heard a noise like a firecracker. Ortberg returned with the shotgun, removed two spent shells, and told Harvey to clean the weapon. Thereafter, Ortberg sought Harvey's assistance in concealing the shotgun. Ultimately, the police obtained a search warrant, searched Ortberg's house, and with Harvey's assistance, seized the shotgun.

At the time Ortberg fired his shotgun into Quirion's house, both Quirion and his wife were at work. The house was occupied by Quirion's eight-year-old son, P.J., his six-year-old daughter, Colleen, and a babysitter, sixteen-year-old Morgana McCormack. McCormack was sitting on a couch near a sliding glass door watching television when the glass door suddenly exploded. McCormack was initially uncertain as to the cause of the shattered glass. There was glass in her hair and on her clothes. After providing for the children's safety, McCormack contacted Quirion through the police dispatcher and he returned home.

Quirion noticed a figure-eight patterned hole in the sliding glass door indicating that at least two objects came through, one right under the other. He also observed shotgun pellets embedded in a bathroom door twenty feet across the room from the sliding glass door. Quirion later determined that the entire glass door would have to be replaced. He obtained an estimate indicating that the cost to replace and install the sliding glass door, the damaged bathroom door, and some damaged sheetrock would be $1,500.

## PROCEEDINGS

After the police seized the shotgun, they arrested Ortberg and transported him to the Anvil Mountain Correctional Center in Nome. Under normal conditions, if he was unable to obtain bail, Ortberg would have been detained in Nome until trial. Mrs. Ortberg, however, was employed as a guard at the correctional center. In order to enable her to continue her employment there, the Division of Corrections determined that it was necessary to house Ortberg elsewhere and, consequently, he was moved, over his objection, to a correctional facility in Anchorage. At his initial appearance, before Magistrate Bradley Gater, Ortberg indicated that he could not afford counsel and requested that counsel be appointed for him. The magistrate appointed a public defender to assist Ortberg.

An omnibus hearing was held on April 1, 1986, before Superior Court Judge Charles R. Tunley. At that time, defense counsel indicated that he had a great deal of difficulty working with Ortberg. The trial

that he was denied the discovery to which he was entitled under Alaska Rule of Criminal Procedure 16; (5) Ortberg's claim that he was improperly arrested without a warrant; (6) Ortberg's claim that his son Harvey was detained and questioned without a parent being present, in violation of Harvey's constitutional rights and in violation of the Alaska Rules of Children's Proceedings; (7) Ortberg's claim that he was denied a preliminary hearing in violation of his constitutional rights and the applicable rules of court; and (8) Ortberg's claim that the trial court erred in denying his motion to peremptorily challenge the judge. Alaska Rule of Criminal Procedure 25(d); AS 22.20.022.

court recessed for twenty-four hours to enable Ortberg and counsel to confer. The following day, counsel indicated that he and Ortberg were still having difficulties resolving their problems. He suggested two alternatives; either Ortberg get new counsel, or Ortberg be appointed co-counsel so that he could file his own pleadings with the court.[2]

Judge Tunley did not specifically rule on counsel's request that Ortberg be given status as co-counsel. On April 4, 1986, however, Judge Tunley did permit counsel to withdraw when he indicated that he could no longer work with Ortberg. Initially, Judge Tunley appointed the Office of Public Advocacy to undertake Ortberg's representation. When that office was unable to represent Ortberg for budgetary reasons, a second public defender was given this responsibility.

Ortberg was brought back to Nome on April 29, 1986, on the representation that he wished to change his plea. At the hearing, his new counsel expressed difficulty in understanding Ortberg's intentions and also requested that Ortberg be permitted to act as co-counsel. Judge Tunley denied this request, explaining that his experience with Ortberg and particularly with Ortberg's *pro se* motion practice indicated to him that Ortberg could not present an intelligible argument. When allowed to address the court, Ortberg expressed confusion about the amount of potential restitution, and indicated a desire to plead to third-degree criminal mischief, a class A misdemeanor. AS 11.46.484(a)(1). Ortberg indicated that he did not wish a jury trial. The state, however, would not accept a plea to the misdemeanor and demanded either a

plea to second-degree criminal mischief, a class C felony, AS 11.46.482(a)(1), or trial. The relevant distinction between the two offenses is the value of the property allegedly damaged; if the value exceeds $500 the offense is a felony. Ortberg continually argued that he had not damaged property in excess of $500. Apparently, the hearing ended without any final conclusions being reached.

On May 2, 1986, defense counsel scheduled a hearing regarding Ortberg's request to waive jury trial. Ortberg changed his mind, however, and determined he wanted a jury trial. Ortberg indicated that he initially wanted a bench trial, but had reconsidered because he felt that the state was harassing him with false charges. Defense counsel indicated that based on his discussions with Ortberg, he had doubts about Ortberg's competency and therefore requested a psychiatric evaluation. Ortberg expressed reservations about being examined by a psychiatrist, and requested an opportunity to talk further with his attorney. After this conference, Ortberg indicated that he wished to plead no contest to criminal mischief in the second degree, a class C felony. The state agreed to dismiss the other counts. Judge Tunley expressed concern that defense counsel was indicating on the one hand that Ortberg should be examined by a psychiatrist to determine Ortberg's competence to proceed, while on the other hand indicating that Ortberg was competent to plead no contest. Defense counsel, however, reassured the court that he believed that Ortberg was competent to plead no contest and that Ortberg wished to do so.[3]

---

**2.** Prior to sentencing, Ortberg never sought to waive counsel and represent himself. It appears, however, that he continually disagreed with counsel over strategy and tactics and filed a number of *pro se* motions without counsel's approval.

**3.** Defense counsel made the following statement:

Thanks, Your Honor. It was at my request that the court ordered that Mr. Ortberg be evaluated for his competency to stand trial, and I'm withdrawing that request at this time. My request to the court was based upon discussions with Mr. Ortberg this morning in

which he—in which he indicated inability to understand the difference between a misdemeanor and a felony, and was making decisions which I felt were not in his best interests and were against the advice of counsel.

All along I've known Mr. Ortberg to fully understand the nature of the charges against him and the nature of the court proceedings; so I was never questioning on his ability—on his competency under the first part of [AS] 12.47.100(b), and I never questioned his ability to assist in the defense until this morning when the problem arose between under-

Based upon defense counsel's representations, Judge Tunley vacated the order to have Ortberg evaluated, and prior to accepting a plea, made the inquiries of Ortberg required by Alaska Rule of Criminal Procedure 11. Judge Tunley carefully reviewed Ortberg's constitutional rights with him, making sure that Ortberg understood the elements of the offense to which he was pleading. Specifically, Judge Tunley made it clear that if the case were tried, the state would have to prove that the shooting was not an accident, and that the value of the damage to the property exceeded $500. Ortberg apparently indicated that he understood the elements of the offense and that he was relieving the state of this burden by pleading no contest.[4] After satisfying himself that Ortberg understood his constitutional rights and in fact wished to enter a plea of no contest, Judge Tunley requested that the state set out the evidentiary basis for the plea. The prosecutor generally recounted the facts set out at the beginning of this opinion. Significantly, the prosecutor made the following statement:

Two shots were fired. It's unclear to me whether both barrels went off simultaneously. That's what it looks like because the—there was one shot immediately above another which would be the pattern one would expect if both barrels were fired at once.

On May 6, 1986, Ortberg filed a *pro se* motion to withdraw his plea. Ortberg based his motion on the following:

The prosecution introduced false evidence before the Grand Jury and fail [sic] to permit discovery by omittion [sic], and obscure identification by hearsay evidence of a Double barrel shotgun without positive identification, omitting modifiers of "side by side" while allowing testimony that a sliding glass door was shot through, one hole above the other, making it seen [sic] as tho [sic] the Double barrel shotgun was a over and under, while the prosecution knew the evidence of a side by side Double barrel Shotgun would negate the intent of accused showing the defendant fell at the time the gun fired. The evidence seize [sic] by a search warrant 2/20/86 issued for the particular crime of third degree assault, with out [sic] nameing [sic] or describing [sic] a assault victim, by applicant, Roy Brown. Did seize a 12 gauge Double barrel side by side model # 137, Falcon Ranger, S.S. # 71996.

The defendant herein shows just cause by undue influence and unfairness, that his plea of nolo contendere should be with-drawed [sic] or criminal mischief in the third degree substituted for second degree.

At a June 13, 1986, hearing, Ortberg's counsel informed the court that Ortberg did not wish to withdraw his plea but ex-

standing the difference between Reckless Endangerment and Assault in the Third.

It was a matter of me not wanting to assist him in making decisions which seemed clearly irrational.

During the short recess a moment ago, however, Mr. Ortberg has asked more about the charges and indicated to me that he does understand the nature of the charge against him some more, and—and the problem with misdemeanor Reckless Endangerment is no longer the issue since he's not been charged with that and the State does not intend to charge him with that, and he'd only be pleading to Count IV, the Criminal Mischief in the Second Degree, which he does fully understand.

And based on my prior discussions with Mr. Ortberg, I'm convinced that he understands each and every element that—of AS 11.46.-420(a)(1), the Criminal Mischief in the Second; and he understands what the—what the

State's burden would be and what the State would have to prove at trial, and he also understands that they would have to prove that to a standard beyond reasonable doubt.

So, based on those discussions, I'm convinced that Mr. Ortberg is certainly competent to enter a plea of no contest to that charge, and I withdraw my request to have him evaluated for this competency to assist in his defense.

4. The transcript of the change of plea proceeding frequently indicates that there is no audible response from Ortberg. In context, however, it appears that Ortberg was speaking too softly to be picked up on the recorder but that Judge Tunley was receiving positive responses from Ortberg and, at least on one occasion, Judge Tunley specifically remembered a positive response that is not reflected in the transcript.

pected to be sentenced for a lesser offense. Counsel indicated that he had not filed the motion himself because Ortberg did not want to be tried on the indictment, which, in light of the state's refusal to accept a plea to the misdemeanor, would be the result of a plea withdrawal. The trial court ordered a psychiatric evaluation to determine Ortberg's competence, and further hearing on the motion to withdraw was stayed pending receipt of the psychiatric report.

A psychiatric report was received from Jerry L. Wessel, M.D., on August 4, 1986. Dr. Wessell found Ortberg competent. He concluded:

1. Mr. Ortberg does not have any sign of mental illness.

2. Mr. Ortberg clearly understands the legal process. He spends about one hour a day reading the laws of the State of Alaska. He is clearly competent to assist in his own defense and to enter pleas. Whether he will use good judgment is questionable.

In addition, Dr. Wessell made the following comment:

Mr. Ortberg has a long history of conflict with the law.... He does appear to possibly have a drinking problem. He shows no sign of major mental illness. Obviously, he does have some personality problems, among which is a tendency for anti-social behavior and contentiousness, along with a strong element of contrariness.

Judge Tunley held a final hearing on the motion to withdraw plea on August 15, 1986. Defense counsel reiterated that Ortberg did not wish to withdraw his plea if it meant he would be tried on the indictment; Ortberg's wish was to plead to the lesser offense. Ortberg offered two justifications for withdrawing his plea: (1) he had independently obtained estimates to repair the damage to the Quirion residence for less than $500, and (2) he believed that the pellet pattern left by the shotgun, proffered as an evidentiary basis for the plea by the prosecution, established that since the shotgun was a side-by-side model, it would have to have been pointed sideways at the time it discharged. In Ortberg's view, this established that the person firing the gun either tripped or sneezed, thereby, accidentally discharging the shotgun. Ortberg reiterated that he was ready to plead to the misdemeanor which in his view he had in fact committed, but did not feel that he had committed the greater offense.

In response, Judge Tunley recessed the hearings so that Officer Quirion could be called as a witness. Officer Quirion testified as to his basis for estimating that the damages were over $500. Judge Tunley concluded that Ortberg had understood at the time he pled that he gave up the right to argue that the shooting was an accident. He concluded that by seeking to withdraw his plea, Ortberg was merely harassing the state in the hope that he could force the state to agree to a plea to the misdemeanor. Judge Tunley therefore denied the motion to withdraw plea.

At a sentencing hearing on September 8, 1986, Ortberg's counsel moved to withdraw on the ground that Ortberg was unhappy with his representation and was contemplating filing complaints with the Alaska Bar Association. It appears that Ortberg wished to file other motions and challenge Judge Tunley for cause, and his attorney declined to do so. Judge Tunley denied Ortberg's purported peremptory challenge on the ground of timeliness, and denied his challenge for cause on the ground that it was meritless. He did permit counsel to withdraw and appointed the Office of Public Advocacy. The sentencing hearing was postponed until someone from that office could converse with Ortberg and prepare for sentencing.

Sentencing was rescheduled for October 29, 1986. Ortberg was represented by new counsel from the Office of Public Advocacy. Ortberg renewed his challenge to Judge Tunley and the challenge was denied. Ortberg then sought to dismiss his third court-appointed attorney. Judge Tunley denied this request, apparently based on an implicit finding that Ortberg was subject to presumptive sentencing and needed the assistance of counsel in order to make an intelligent presentation. After

hearing from the parties, Judge Tunley concluded that Ortberg had one prior felony for purposes of presumptive sentencing and was therefore vulnerable to a two-year presumptive term.

In addition, Judge Tunley found two aggravating factors. First, Ortberg's prior felony conviction was for voluntary manslaughter, a more serious offense, AS 12.-55.155(c)(7), and second, Ortberg used a dangerous instrument in perpetrating this offense, AS 12.55.155(c)(4). Relying heavily on Ortberg's prior criminal record and the serious nature of the offense, Judge Tunley imposed an adjusted presumptive term of five years with one year suspended.

### DISCUSSION

*Constitutionality of the Statute*

Alaska Statute 11.46.482 provides in material part:

*Criminal mischief in the second degree.* (a) A person commits the crime of criminal mischief in the second degree if, having no right to do so or any reasonable ground to believe the person has such a right,

(1) with intent to damage property of another, the person damages property of another in an amount of $500 or more....

■ Ortberg argues that the state may not constitutionally punish him for a criminal act in the absence of a showing of *mens rea.* He acknowledges that this statute requires that in order to be culpable a person must intentionally damage the property of another without any right or reasonable ground to believe that he has a right to do so. Ortberg argues that this is not sufficient and that, in addition, the person damaging the property must know that the damage he does exceeds $500 in

value. Otherwise, Ortberg concludes, he is being held strictly liable for the value of the property he damaged.

The state argues that this statute must be read in conjunction with AS 11.81.600(b) (a person is not guilty of an offense unless the person acts with a culpable mental state) and AS 11.81.610(b) (if a statute does not prescribe a culpable mental state, the culpable mental state that must be proved with respect to a circumstance or a result is "recklessly").[5] The state's interpretation of the statute answers Ortberg's constitutional claims. We, however, prefer a different approach.

In our view, *Bell v. State,* 668 P.2d 829 (Alaska App.1983), is dispositive of this issue. In *Bell,* we recognized that the legislature could impose strict liability with regard to certain elements of an offense, so long as the offense, when viewed in its totality, requires that the defendant acted with a sufficient awareness or consciousness of wrongdoing. 668 P.2d at 833. Here, the legislature's express requirement that the person intentionally damage the property of another, with no reason to believe that his act is authorized, sufficiently establishes a basis for finding an awareness or consciousness of wrongdoing. We are satisfied that the legislature did not, and was not required to, additionally require that the person know or have reason to believe that the damage he caused would ultimately exceed $500 in order to be guilty of the offense.

*Ortberg's Right to Status as Co-counsel in the Trial Court*

Under the sixth amendment to the United States Constitution, and article I, section 11 of the Alaska Constitution, any person accused of a crime has the right to assistance of counsel. *See Argersinger v. Hamlin,* 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d

---

**5.** AS 11.81.900(a)(3) provides:

[A] person acts "recklessly" with respect to a result or to a circumstance described by a provision of law defining an offense when the person is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists; the risk must be of such a nature and degree that disregard of it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation; a person who is unaware of a risk of which the person would have been aware had that person not been intoxicated acts recklessly with respect to that risk[.]

530 (1972); *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); *Alexander v. Anchorage,* 490 P.2d 910 (Alaska 1971). An indigent defendant has no right, however, to pick and choose among appointed counsel, *i.e.,* an indigent has no right to fire appointed counsel and demand appointment of new counsel. *Morris v. Slappy,* 461 U.S. 1, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983); *Bentley v. State,* 393 P.2d 225, 230–31 (Alaska 1964); *Annas v. State,* 726 P.2d 552, 557–58 (Alaska App. 1986); *see also V.F. v. State,* 666 P.2d 42, 46–7 n. 5 (Alaska 1983) (applying similar rule to the appointment of counsel for indigents in child custody proceedings). Nevertheless, a person who is competent to do so may waive counsel entirely and represent himself. *McKaskle v. Wiggins,* 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984); *Farretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); *McCracken v. State,* 518 P.2d 85 (Alaska 1974).

Before permitting a defendant to proceed *pro se,* the court must first be assured that the defendant is competent, and that the defendant intelligently, knowingly, and voluntarily waives counsel. Even in cases in which a supposedly competent defendant asserts a willingness to waive counsel, the right of self-representation is not absolute. The Alaska Supreme Court has noted that in order to prevent perversion of the judicial process, the trial court must first ascertain that the defendant is capable of presenting his or her allegations in a rational and coherent manner before allowing the defendant to proceed *pro se.* Additionally, the trial court must satisfy itself that the defendant understands precisely what he or she is giving up by declining the assistance of counsel. *McCracken,* 518 P.2d at 91. Only when a defendant waives counsel and is competent and capable of proceeding *pro se,* may the court appoint advisory counsel to assist the defendant. *McKaskle,* 465 U.S. at 176, 104 S.Ct. at 949–50; *McCracken,* 518 P.2d at 92.

When a competent defendant does not wish to proceed entirely *pro se,* but wishes to partially waive counsel and be permitted to participate in the trial as "co-counsel," that defendant may, after being fully advised of his or her rights and entering appropriate waivers of full representation by counsel, be permitted to participate as co-counsel. In such a case, a defendant might rely primarily upon counsel to present arguments and evidence, while retaining the right to address the court on certain issues and conduct the examination of certain witnesses.

■ In cases of hybrid representation someone must be in charge of the defense. If the defendant is to be in charge, the trial court must first obtain a waiver of counsel and make a determination of competency, since such an individual is in effect proceeding *pro se.* No complete waiver of counsel is necessary, provided that it is clear to both defendant and counsel at the time co-counsel status is authorized that counsel is to remain in charge of the defense. Although the right to counsel and the right to self-representation are constitutionally protected, the right to participate as co-counsel or have hybrid representation is not. The trial court has broad discretion to deny hybrid representation or co-counsel status. *Annas,* 726 P.2d at 557; *Cano v. Anchorage,* 627 P.2d 660, 664 (Alaska App. 1981).

■ In the instant case, Judge Tunley apparently denied counsel's various requests to permit Ortberg to act as "co-counsel" because he was convinced that Ortberg was incapable of presenting his allegations in a rational and coherent manner. Judge Tunley's conclusions find support in the record. He was therefore within his discretion in denying Ortberg co-counsel status. *See McCracken,* 518 P.2d at 91.

The record also establishes an alternate reason for denying co-counsel status. In *Cano,* we stressed the trial court's broad discretion to regulate trials, including the conduct of counsel in the courtroom. Implicit in *Cano* is the requirement that co-counsel or hybrid representation should only be allowed if counsel and the defendant can work together and present a coherent defense. This is not to say that coun-

sel and the defendant must agree as to the relative merits of different arguments, but they must be sufficiently in agreement to be able to work together and present an intelligible defense. In the instant case, although Ortberg's various attorneys were willing to have Ortberg given co-counsel status, they expressed inability to understand Ortberg's requests. Also, their respective opposition to presenting Ortberg's various claims establishes a lack of the coordination and cooperation necessary to the co-counsel relationship.

We stress that co-counsel status should never be used as a device for obscuring problems of client control. Both defendant and counsel must always recognize who is in charge of the defense. In the absence of a *Faretta–McCracken* waiver of counsel, counsel must be ultimately responsible for the defense. Judge Tunley did not abuse his discretion in denying Ortberg co-counsel status. Consequently, Judge Tunley did not abuse his discretion when he refused to consider arguments and pleadings from Ortberg which were not submitted by counsel. Alaska Criminal Rule 50(b) and Alaska Civil Rule 81(c); *Annas*, 726 P.2d at 559–60 nn. 7 and 8.[6]

### Withdrawal of Plea

Alaska Criminal Rule 11(h)(2) states:

> Once the plea has been accepted by the court and absent a showing that withdrawal is necessary to correct a manifest injustice, a defendant may not withdraw a plea of guilty or nolo contendere as a matter of right. Before sentence, the court in its discretion may allow the defendant to withdraw a plea for any fair and just reason unless the prosecution has been substantially prejudiced by reliance upon the defendant's plea.

■ In seeking to withdraw a plea before sentencing, the burden is on the defendant to establish a "fair and just" rea-

son for withdrawal. *McClain v. State*, 742 P.2d 269, 271 (Alaska App.1987); *Wahl v. State*, 691 P.2d 1048, 1051 (Alaska App. 1984). The decision of whether to grant the withdrawal is within the trial court's discretion. A presentence request for withdrawal, however, should be liberally granted. *Id.; Travelstead v. State*, 689 P.2d 494, 497 (Alaska App.1984). But the trial court's ruling on the withdrawal motion will only be reversed where the court abuses its discretion. *Ningealook v. State*, 691 P.2d 1053, 1056 (Alaska App.1984). In exercising its discretion, the trial court must decide the issue in light of the totality of the circumstances. *McClain*, 742 P.2d at 271. As we have previously stated:

> In each case, the reason given by the defendant for withdrawal of a plea must be examined in light of factors such as the extent of delay in making the request, the amount of prejudice to the prosecution, and the possibility that the request constitutes an attempt by the defendant to manipulate the proceedings in order to obtain an unfair tactical advantage.

*Wahl*, 691 P.2d at 1051.

■ Ortberg filed his *pro se* motion to withdraw his plea within a few days of entering the plea and substantially prior to sentencing. It does not appear that the state would have suffered any prejudice had the case proceeded to trial. Consequently, Ortberg need only have established a fair and just reason for withdrawal. Though the trial judge had discretion to permit withdrawal, we will not find that the trial judge abused his discretion in denying withdrawal, unless Ortberg establishes that he provided a sufficient reason. It is not sufficient that he simply changed his mind, re-evaluated the evidence against him, or became more optimistic about his chances at trial than he was at the time of his plea. *See McClain*, 742 P.2d at 271.

---

**6.** Alaska Rule of Criminal Procedure 50(b) provides that the civil rules regarding attorneys shall apply in criminal cases. Civil Rule 81(c) provides that except as otherwise ordered by the court, a party who has appeared through an attorney may not thereafter appear or act in his own behalf in any action or proceeding, unless an order of substitution shall have been made by the court after notice to such attorney.

We are satisfied that Civil Rule 81(c) applies to those represented, *i.e.,* "appearing through" appointed counsel as well as retained counsel. The rule would also govern a person granted co-counsel status.

In prior cases, we have recognized that plea withdrawal may be appropriate where the trial court is convinced that the defendant entered his plea in reliance on a material mistake of fact even if the mistake is unilateral. *Wahl,* 691 P.2d at 1053. Ortberg is apparently arguing that he entered his plea relying on two mistakes of fact regarding the evidence that would have been available had he gone to trial. First, he contends that he mistakenly concluded that the evidence would support a finding that the property damage exceeded $500 when in fact it would not. Second, he contends that he was unaware of the pattern left by the shotgun pellets in the Quirion wall, which he now contends strongly supports an accident defense. It does not appear, however, that Ortberg was "mistaken" about either of these items at the time he entered his plea.

The record establishes that Ortberg and his first attorney listened to a cassette recording of the testimony before the grand jury that established the pattern of shotgun pellets left in the wall. Further, in establishing an evidentiary basis for the plea, the prosecutor referred to this pattern in Ortberg's presence and the trial court specifically inquired of Ortberg regarding his understanding that this would be the evidence presented at trial. Under the circumstances, the record will not support a finding that Ortberg mistakenly entered into a plea because of a misunderstanding of the evidence regarding the pellet pattern.

Moreover, Ortberg cannot succeed on his claims regarding the cost of repairing the damage to Quirion's property. This was clearly a matter in controversy between the parties from the inception of the case. On numerous occasions, Ortberg expressed his belief that Quirion had exaggerated the amount of the damage. Consequently, it cannot be said that he mistakenly relied on an inaccurate estimate of the actual damage in making his plea. The most that can be said of Ortberg's argument, as stated by his second attorney, is that Ortberg believed that if he could demonstrate at sentencing that the actual value of the damage was less than $500, he might be permitted to plead to and be sentenced to the lesser offense. It is clear from the record, particularly with regard to evidence introduced by Ortberg at his sentencing, that Ortberg cannot show conclusively that the actual cost of repair to the Quirion residence was less than $500. The most he can show is that a dispute exists regarding the actual cost of repairs. In summary, the trial court did not err in concluding that Ortberg was not advancing his contentions in good faith and had no fair and just reason for withdrawing his plea. On this basis the trial court could find that Ortberg was manipulating the system.

Furthermore, the record supports the trial court's conclusion that Ortberg's actions, viewed in context, were intended to cause multiple hearings on frivolous issues with the hope of coercing the state into permitting Ortberg to plead to the lesser offense. We agree that this is an additional reason for finding the kind of manipulation of the system that justifies denial of a motion to withdraw a plea. *See Ningealook,* 691 P.2d at 1055–56.[7]

### The Sentence

Ortberg was convicted of voluntary manslaughter in California in 1969, and grand larceny in the same state in 1976. The trial court found that the manslaughter conviction was sufficiently similar to contemporary Alaska law to constitute a prior felony, but that the grand theft conviction was not. AS 12.55.145(a)(2). In addition, the trial court found two aggravating factors, that Ortberg used a dangerous instrument in perpetrating the offense, AS 12.55.-155(c)(4), and that his prior felony was more serious than his current offense, AS

---

7. Ortberg argues in passing that Judge Tunley's expressions of concern at Ortberg's manipulative behavior somehow show bias or prejudice, warranting transfer of the matter to another judge. We have carefully reviewed the record and conclude that despite some understandable annoyance at Ortberg's stream of consciousness pleading, the trial court conducted the hearings in an eminently fair manner throughout. We find no basis for a challenge for cause.

12.55.155(c)(7). The trial court imposed a sentence of five years with one year suspended and placed Ortberg on probation for three years.

■ Ortberg challenges his sentence on a number of grounds. He argues that the trial court erred in finding that he used a dangerous instrument in furtherance of the offense, AS 12.55.155(c)(4). He reasons that this factor was intended to aggravate sentences for crimes against persons, not property, and that given the broad definition of dangerous instruments, the aggravator would apply to nearly every case involving damaged property.

We have previously held that use of a dangerous instrument will not aggravate a crime unless, under the totality of the circumstances, use of the instrument enhanced the risk of physical injury to persons present. *See Abdulbaqui v. State,* 728 P.2d 1211, 1216 (Alaska App.1986); *Linn v. State,* 658 P.2d 150, 153–54 (Alaska App.1983). This does not mean, however, that the aggravator can never apply to a property crime, particularly where a property crime is committed under circumstances creating a substantial risk of physical injury to others. In the present case, Ortberg discharged a shotgun through a window into a house, at night, where lights were on, indicating the possible presence of occupants. In fact, his action resulted in showering an occupant with broken glass. Under the circumstances, the trial court did

not err in applying the aggravator to enhance Ortberg's sentence.

Ortberg next argues that the trial court erred in failing to consider his potential for rehabilitation. In presenting his sentencing remarks, Judge Tunley carefully reviewed the case in light of the *Chaney* sentencing criteria: rehabilitation, isolation, deterrence of self and others, and reaffirmation of community norms. *See State v. Chaney,* 477 P.2d 441, 444 (Alaska 1970). He discounted Ortberg's potential for rehabilitation because of his past criminal history.

■ On appeal, Ortberg concedes that he has a substantial prior criminal record, including two felony convictions in California for which he served a substantial period of incarceration, as well as an extensive misdemeanor and juvenile record. Nevertheless, he contends that more than ten years elapsed between his most recent felony conviction and the present case, even if the trial court correctly concluded that Ortberg's release date from parole supervision for that offense made him technically a second offender under AS 12.55.145(a)(1).[8] Ortberg notes that a probation officer had recommended his early release from supervising Ortberg's California parole because Ortberg had worked steadily in Nome and showed outstanding behavior. While Ortberg had a driving while intoxicated conviction in 1981 and an open container conviction in 1984, it does not appear that he has any other criminal convictions. In Ort-

---

**8.** Alaska Statute 12.55.145 provides in pertinent part:

*Prior Convictions.* (a) For purpose of considering prior convictions in imposing sentence
. . .
(1) a prior conviction may not be considered if a period of 10 or more years has elapsed between the date of the defendant's unconditional discharge on the immediately preceding offense and commission of the present offense unless the prior conviction was for an unclassified or class A felony;

Since the record supports Judge Tunley's conclusion that Ortberg was "unconditionally discharged on the immediately preceding [prior felony] offense" within ten years of his commission of the instant offense, it is not necessary for us to determine whether Ortberg's manslaughter conviction in California "was for an unclassified or class A felony."

In 1982, the legislature amended AS 12.55.145 to extend from seven to ten years the period during which prior felonies could be considered. Ortberg argues that the amendment should not make him subject to presumptive sentencing for his 1986 offense because his prior conviction occurred before 1982. We reject this contention. Ortberg's current offense—which triggered presumptive sentencing—occurred in 1986, after the amendment to the statute. Thus, application of the amendment to his sentence was not invalid as an *ex post facto* law, U.S. Const., art. 1, § 10; Alaska Const., art. 1, § 15. *Gryger v. Burke,* 334 U.S. 728, 732 (1948); *Danks v. State,* 619 P.2d 720, 722 (Alaska 1980); *Carter v. State,* 625 P.2d 313, 315 (Alaska App.1981).

berg's view, his prior convictions were stale and his current conviction was not properly considered as part of a pattern of behavior with those earlier incidents.

We agree with Ortberg that the prior convictions, due to their age, are of less significance than a more current criminal record would be. Nevertheless, the defendant's potential for rehabilitation need not be given controlling weight. *Bailey v. State,* 548 P.2d 373 (Alaska 1976); *see also Ridgely v. State,* 739 P.2d 1299, 1302 (Alaska App.1987). Judge Tunley found that Ortberg was a worst offender due to the circumstances of the offense. He pointed out that Ortberg had used a very dangerous weapon, that he committed the offense at night, and that he either was, or should have been, aware that he endangered people in the Quirion house. In Judge Tunley's view, the circumstances of the offense and Ortberg's criminal history indicate that he is extremely dangerous. In view of the totality of the circumstances, we are satisfied that Judge Tunley was not clearly mistaken in imposing Ortberg's sentence. *McClain v. State,* 519 P.2d 811, 813 (Alaska 1974).

The judgment of the superior court is AFFIRMED.[9]

---

**9.** Ortberg has raised some additional issues that we briefly address.

Ortberg argues that the trial judge held his *pro se* motion to withdraw plea under advisement for more than 30 days in violation of Alaska Rule of Criminal Procedure 45(d)(1). Rule 45 is a speedy trial rule. It does not apply to motions made after a plea of no contest is answered, including motions to withdraw the plea. *See Morris v. State,* 734 P.2d 1012, 1014 (Alaska App.1987). In any event, Judge Tunley was not obligated to consider *pro se* motions at all until Ortberg had been allowed to waive counsel and had formally elected to proceed *pro se.* Alaska R.Civ.P. 81(c).

Ortberg additionally claims that the value of the property damaged was established by hearsay estimates obtained more than 120 days after the grand jury returned an indictment. He argues that this violates Alaska Rule of Criminal Procedure 45. This rule does not apply to the gathering of evidence. Taking into account excluded periods, this case culminated in a plea of no contest entered within the the time limits permitted by the rule. *Morris,* 734 P.2d at 1014.

Finally, Ortberg argues that his peremptory challenge and challenge for cause of Judge Tunley should have been sustained. These challenges were interposed at sentencing. The peremptory challenge was untimely and the record does not establish a basis for a challenge for cause.