NOTICE

*The text of this opinion can be corrected before the opinion is published in the* <u>Pacific</u> <u>Reporter</u>. *Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

| | |
|---|---|
| ANDREW VICTOR THOMAS, | Court of Appeals No. A-11408 |
| Appellant, | Trial Court No. 3PA-10-2049 CR |
| v. | |
| | O P I N I O N |
| STATE OF ALASKA, | |
| Appellee. | No. 2522 — September 23, 2016 |

Appeal from the Superior Court, Third Judicial District, Palmer, Eric Smith, Judge.

Appearances: Elizabeth D. Friedman, Assistant Public Advocate, Appeals and Statewide Defense Section, and Richard Allen, Public Advocate, Anchorage, for the Appellant. Elizabeth T. Burke, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Craig W. Richards, Attorney General, Juneau, for the Appellee.

Before: Mannheimer, Chief Judge, Allard, Judge, and Suddock, Superior Court Judge.[*]

Judge MANNHEIMER.

---

[*] Sitting by assignment made pursuant to Article IV, Section 16 of the Alaska Constitution and Administrative Rule 24(d).

In early August 2010, Andrew Victor Thomas was released from prison where he had been serving a sentence for assaulting his long-time girlfriend, Susanna Braden. On August 4th, Thomas came to the cabin where Braden was staying and demanded that she leave with him. When Braden refused, Thomas stabbed her repeatedly, and then he bludgeoned her several times in the head with a sledge hammer.

The stabbing portion of this assault was witnessed by another person who was present in the cabin, and this person summoned help. But by the time the state troopers arrived, Braden was dead. After the troopers took Thomas into custody, he repeatedly confessed to killing Braden.

Based on this episode, Thomas was charged with murder in the first and second degrees. Because Thomas was indigent, the Office of Public Advocacy was appointed to represent him.

From the beginning, Thomas had a contentious relationship with his court-appointed attorney. Thomas disagreed with his attorney about how the case should be investigated, what the trial strategy should be, and what pre-trial motions should be pursued.

Several times, Thomas asked to be allowed to represent himself. Each time, the superior court concluded that Thomas was not competent to do so. (Thomas does not challenge these rulings on appeal.)

In late 2010, Thomas asked the superior court to grant him co-counsel status so that he could file various pre-trial motions that his attorney had refused to file. Even though Thomas's attorney opposed his request, the superior court granted Thomas's motion. The court believed — mistakenly — that Thomas had a right to participate as co-counsel if he and his attorney had unresolvable disagreements about what motions to file.

In fact, the law is the opposite. Although a trial judge is required to give "due consideration" to a defendant's request for co-counsel status,[1] a defendant who is represented by an attorney has no right to participate as co-counsel. *Christian v. State*, 276 P.3d 479, 484 (Alaska App. 2012); *Ortberg v. State*, 751 P.2d 1368, 1375 (Alaska App. 1988). As we explained in *Ortberg*, 751 P.2d at 1375:

> Although the right to counsel and the right to self-representation are constitutionally protected, the right to participate as co-counsel or [to] have hybrid representation is not. The trial court has broad discretion to deny hybrid representation or co-counsel status. *Annas* [*v. State*], 726 P.2d [552,] 557 [(Alaska App. 1986)]; *Cano v. Anchorage*, 627 P.2d 660, 664 (Alaska App. 1981).

Perhaps more importantly, this Court stated in *Ortberg* that "co-counsel [status] or hybrid representation should only be allowed if [defense] counsel and the defendant can work together and present a coherent defense." 751 P.2d at 1375.

This was obviously not the situation in Thomas's case. Thomas made his request for co-counsel status precisely because he and his court-appointed attorney could *not* "work together and present a coherent defense". Thomas disagreed with his attorney about the defense strategy, Thomas wished to pursue pre-trial motions that his attorney refused to file, and Thomas's attorney openly opposed his request for co-counsel status. Given these facts, the superior court abused its discretion when it granted Thomas's request for co-counsel status.

All of this brings us to Thomas's claim on appeal:

Among the pre-trial motions that Thomas filed as co-counsel, Thomas asked the superior court to order the Office of Public Advocacy to pay for (1) additional

---

[1]    *Cano v. Anchorage*, 627 P.2d 660, 664 (Alaska App. 1981).

investigation that Thomas wished to pursue, (2) expert witnesses whom Thomas wished to retain (to wit, a psychiatrist and an expert on alcohol intoxication), and (3) additional scientific testing (to wit, independent DNA testing of Thomas and everyone else who was present at the crime scene, plus re-testing of the blood sample drawn from Thomas following his arrest).

The superior court concluded that it had no authority to order the Office of Public Advocacy to pay for these things, since the agency had concluded that these expenses were unwarranted.

On appeal, Thomas argues that the superior court had the authority to overrule the Office of Public Advocacy's decisions on these matters — in other words, the authority to order the agency (against its will) to pay for the additional investigation, expert witnesses, and scientific testing that Thomas wanted. Thomas contends that the superior court was required to hold an *ex parte* hearing (*i.e.*, a hearing from which the prosecutor would be excluded) to allow Thomas to fully and openly explain his reasons for wanting these additional resources — so that the superior court could then decide whether Thomas's arguments in favor of these additional resources had sufficient merit to justify overruling the agency's decision and ordering the agency to pay for the things Thomas wanted.

We reject Thomas's argument. As we have explained, given the facts of this case, Thomas's request for co-counsel status should have been denied — because this request for co-counsel status arose directly from Thomas's disagreements with the tactical and strategic decisions of his court-appointed attorney.

When Thomas asked the superior court to order the Office of Public Advocacy to fund the extra investigation, expert witnesses, and scientific testing that Thomas wanted, Thomas was using his co-counsel status, not to supplement the arguments presented by his court-appointed attorney, but rather to attack his attorney's

choices regarding strategy, regarding what investigation appeared to be material and potentially promising to the defense, and regarding the most beneficial use of attorney time and agency money.

Thomas was, in essence, asking the superior court to override the Office of Public Advocacy's decisions about how the murder charges should be defended and how the agency's resources should be allocated. This was an improper use of Thomas's co-counsel status.

The Office of Public Advocacy was required to represent Thomas competently, but this duty of competent representation did not include the obligation to pursue every conceivable avenue of investigation or every conceivable method of defending the case. As this Court noted in *Allen v. State*, 153 P.3d 1019, 1026 (Alaska App. 2007):

> Given an unrestricted budget and freed of any constraints as to probable materiality or accountability, a lawyer might cheerfully log many hours looking for the legal equivalent of a needle in a haystack. A millionaire might retain counsel to leave not a single stone unturned. However, a defendant is not entitled to perfection, but to basic fairness. In the real world, expenditure of time and effort is dependent on a reasonable indication of materiality.

(Quoting *State v. Jones*, 759 P.2d 558, 572 (Alaska App. 1988), which in turn was quoting *United States v. DeCoster*, 624 F.2d 196, 211 (D.C. Cir. 1976) (*en banc*).)

If Thomas believes that the Office of Public Advocacy's choices were so inept as to constitute incompetence of counsel, he may pursue a petition for post-conviction relief. But Thomas was not entitled to have the superior court override the agency's choices of how and where to devote its time and money in Thomas's case.

The judgement of the superior court is AFFIRMED.