NOTICE

*The text of this opinion can be corrected before the opinion is published in the Pacific Reporter. Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

| | |
|---|---|
| SHAWN GREGORY BELKNAP, | Court of Appeals No. A-12471 |
| Appellant, | Trial Court No. 3AN-14-2560 CR |
| v. | |
| | O P I N I O N |
| STATE OF ALASKA, | |
| Appellee. | No. 2610 — July 27, 2018 |

Appeal from the Superior Court, Third Judicial District, Anchorage, Kevin M. Saxby, Judge.

Appearances: Lars Johnson (opening brief) and Megan R. Webb (reply brief), Assistant Public Defenders, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant. Ann B. Black, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Craig W. Richards, Attorney General, Juneau, for the Appellee.

Before: Mannheimer, Chief Judge, Allard, Judge, and Suddock, Superior Court Judge.[*]

Judge ALLARD, writing for the Court and concurring separately.

_____

[*] Sitting by assignment made pursuant to Article IV, Section 16 of the Alaska Constitution and Administrative Rule 24(d).

Pursuant to a plea agreement, Shawn Gregory Belknap was convicted of felony driving under the influence and sentenced to 3 years to serve.[1] A few months after his sentence was imposed, Belknap filed a pro se motion under AS 12.55.027(d) requesting sentencing credit for the time he spent on bail release under conditions that included court-ordered electronic monitoring. Belknap also requested that counsel be appointed to assist him in this litigation. The superior court denied Belknap's request for counsel. The court ultimately granted Belknap's request for sentencing credit in part, granting Belknap 62 days of credit out of the approximately 279 days of credit that he sought.

Belknap now appeals, arguing that the superior court erred when it denied him the additional credit he sought. Belknap also argues that the superior court erred when it denied his request for appointment of counsel. For the reasons explained here, we conclude that a post-judgment motion for sentencing credit under AS 12.55.027(d) is a critical stage of a criminal proceeding for which a defendant is entitled to the assistance of counsel. We therefore conclude that Belknap is entitled to re-litigate his request for the additional credit with the assistance of counsel that he was previously denied. Because Belknap's counsel may have additional evidence or arguments to offer in support of this request, we express no opinion as to whether Belknap is entitled to the additional sentencing credit he seeks.

*Background facts and prior proceedings*

Belknap was arrested in March 2014 for felony driving under the influence, reckless driving, and driving while license revoked. A month after his arrest, Belknap was released on bail under conditions that included 24-hour GPS-based electronic

---

[1] AS 28.35.030(n).

monitoring supervision through a steel cuff monitor on Belknap's ankle. The bail order restricted Belknap to his house, with limited passes for work, court, and medical appointments. Belknap was also required to carry a remote SCRAM breath alcohol monitor, which would test Belknap's breath for the presence of alcohol at both scheduled and random times throughout the day. The SCRAM monitor was equipped with a separate GPS tracking system and facial recognition software to ensure Belknap's compliance with the tests. Belknap successfully completed 62 days without any violations of the conditions of his bail release while under this bail order.

At Belknap's request, the trial court then modified Belknap's bail release to eliminate the 24-hour GPS-based continuous electronic monitoring. The court retained the SCRAM breath alcohol monitoring. Under this modified bail order, Belknap's movements were only tracked intermittently, through the GPS-based SCRAM breath alcohol tests. Belknap's time at work was also directly supervised by a live third-party custodian.

Belknap was less successful on these modified conditions. After approximately six months on the modified bail release program, Belknap failed two different drug tests and he was remanded to custody for that reason. Less than a month later, Belknap was re-released on the same modified bail conditions, but subsequently remanded to custody again after another failed drug test.

On April 6, 2015, Belknap pleaded guilty to felony driving under the influence pursuant to a plea agreement, and he was sentenced to 3 years to serve. Belknap was represented by privately retained counsel at his sentencing hearing.

Shortly after Belknap was sentenced, the Alaska legislature enacted the current version of AS 12.55.027(d), which allows trial courts to grant sentencing credit to defendants who are on court-ordered electronic monitoring programs during their bail

release.[2] This sentencing credit is not available to defendants who commit "a criminal offense" while on their electronic monitoring program.[3] In most instances, a defendant's violation of a condition of release qualifies as a "criminal offense" for these purposes and precludes a defendant from receiving credit under AS 12.55.027(d).[4]

In July 2015, shortly before this new legislation went into effect, Belknap filed a pro se motion under the new statute. In that motion, Belknap sought credit for the approximately 279 days that he spent on pretrial bail release in his case. The court refused to hear the pro se motion because Belknap was still represented by his private counsel.[5] Belknap's private counsel was then permitted to withdraw, and the court then accepted the pro se motion for filing.

The State opposed Belknap's claim for credit on multiple grounds. The State argued first that the statute could not be retroactively applied to Belknap. The State also argued that Belknap's modified monitoring program was not sufficiently

---

[2] SLA 2015, ch. 20, §§ 1-3 (House Bill 15). The effective date of this new legislation was August 12, 2015. *See* 2015 House Journal 1188.

[3] AS 12.55.027(d) ("A court may grant credit against a sentence of imprisonment for time spent under electronic monitoring if the person has not committed a criminal offense while under electronic monitoring ..."); *see also State v. Bell*, __ P.3d __, Op. No. 2592, 2018 WL 1221458, at *5 (Alaska App. Mar. 9, 2018).

[4] *See* AS 11.56.757(b) (violation of condition of release is a class B misdemeanor); *see also Bell*, 2018 WL 1221458 at *5; *State v. Thompson*, __ P.3d __, Op. No. 2595, 2018 WL 1885671, at *2-5 (Alaska App. Apr. 20, 2018) (holding that a violation of conditions of release did not qualify as a criminal offense for purposes of awarding sentencing credit under AS 12.55.027(d) during the time in which the Alaska legislature had categorized this offense as a non-criminal violation).

[5] *See, e.g., Ortberg v. State*, 751 P.2d 1368, 1379 n.9 (Alaska App. 1988) (pro se pleadings are properly rejected by the court when a defendant is represented by counsel).

comprehensive or restrictive to qualify for "electronic monitoring" for purposes of AS 12.55.027(d). Lastly, the State argued that Belknap was ineligible for any sentencing credit because he had violated the conditions of his release by ingesting illegal drugs while on bail release.

The superior court held an evidentiary hearing on Belknap's request for credit. At the evidentiary hearing, Belknap requested that counsel be appointed to assist him in litigating his motion. The superior court denied this request. The court also denied Belknap's request for a continuance, although the court allowed Belknap to submit additional materials after the hearing and the court also allowed Belknap to submit additional briefing.

The superior court subsequently issued a written order rejecting the State's retroactivity argument and partially granting Belknap's motion for credit. The court concluded that Belknap was entitled to credit for the 62 days that he spent on bail release under the 24-hour GPS-based electronic monitoring program, because Belknap successfully completed that time on electronic monitoring without violating the conditions of his release or otherwise committing a new criminal offense. But the court concluded that Belknap was not entitled to any credit for the time he spent on the modified SCRAM-only monitoring program because the court found that this modified program was not sufficiently comprehensive or restrictive to qualify as "electronic monitoring" for purposes of AS 12.55.027(d). The court also noted that Belknap would apparently be ineligible for that credit based on the violations of the conditions of his release while on that modified program.

Belknap filed a motion for reconsideration, arguing that the modified SCRAM-only monitoring program was sufficiently restrictive to be considered "electronic monitoring" under the statute because Belknap was subject to multiple

random breath tests on a daily basis and those random breath tests also automatically recorded his GPS location. According to Belknap, there was no functional difference between the level of supervision provided by the original 24-hour GPS-based steel ankle cuff monitoring program and the subsequent modified monitoring program.

The superior court rejected this claim and denied Belknap's motion for reconsideration. The court also noted that, even if the SCRAM-only program qualified as "electronic monitoring" under the statute, Belknap's illegal drug use while on that program would make him ineligible for any credit for the time he spent on bail release under that modified program.[6]

Belknap, now represented by the Alaska Public Defender Agency, appeals the superior court's rulings, including the superior court's denial of his request for counsel. The State has not cross-appealed.[7]

*Why we conclude that Belknap was entitled to the assistance of counsel in litigating his request for credit*

On appeal, Belknap argues that the superior court erred when it denied his request for appointed counsel. Belknap contends that a motion for sentencing credit under AS 12.55.027(d) should be considered a "critical stage" of the underlying criminal action akin to sentencing because resolution of such claims directly affects the length of time a defendant will have to serve in jail.[8]

---

[6] AS 12.55.027(d).

[7] On appeal, the State argues that Belknap was not entitled to the 62 days of credit he received. Because the State did not cross-appeal the granting of this credit, we do not address the State's arguments here.

[8] *See Egelak v. State*, 438 P.2d 712, 715 (Alaska 1968) (criminal defendant has
(continued...)

In response, the State argues that a post-judgment motion for sentencing credit is not a "critical stage" of the underlying criminal action, and Belknap was therefore not entitled to the assistance of counsel. Instead, the State analogizes these court proceedings to administrative prisoner disciplinary proceedings in which a defendant faces the loss of potential good-time credit based on his alleged misconduct while in jail. The State points out that prisoners are not entitled to counsel for these administrative hearings even though resolution of those proceedings may also affect the amount of time that the prisoner will serve in jail.

We find this analogy inapt. A prisoner disciplinary proceeding is an administrative matter conducted under the authority of the Department of Corrections.[9] The proceeding is entirely separate from the prisoner's underlying criminal case and its focus is on whether the prisoner violated the facility's rules as a factual matter.[10]

In contrast, a motion for sentencing credit is filed as part of the defendant's underlying criminal case and is litigated in the trial court. The motion involves factual matters relating to other proceedings in the criminal case — specifically, the court's bail orders and the defendant's conduct while under those court orders. In addition, it is the defendant who bears the burden of showing, by a preponderance of the evidence, that he is entitled to the sentencing credit he seeks.[11] Moreover, as this case demonstrates, resolution of the motion can involve complicated questions of statutory interpretation

---

[8]    (...continued)
constitutional right to be present and to be assisted by counsel at every critical stage of a criminal proceeding).

[9]    *See* 22 Alaska Administrative Code (AAC) 05.400 *et seq*.

[10]    *See McGinnis v. Stevens*, 543 P.2d 1221, 1228-29 (Alaska 1979).

[11]    *See* AS 12.55.027(e).

that an unrepresented defendant is ill-equipped to litigate. Likewise, resolution of the motion will often require supplementation of the factual record with materials from the private electronic monitoring agencies that can be difficult for an incarcerated and unrepresented defendant to obtain.[12]

In *Shannon v. State*, an unpublished memorandum, we recognized that a defendant litigating a post-judgment motion to reduce sentence would face similar difficulties, and we therefore concluded that defendants were entitled to the assistance of counsel in litigating those post-judgment motions.[13] We also find the reasoning articulated by Chief Judge Bryner in his concurrence in *Shannon* particularly persuasive and equally applicable to the circumstances presented here.

As Chief Judge Bryner noted, a post-judgment motion to reduce sentence is "neither detached from nor collateral to the original criminal case."[14] Instead "it is a component part of the original case and, as such, is available to the accused as a matter of right."[15] Chief Judge Bryner further noted that "[o]nce the right to counsel attaches in a criminal case ... it attaches to the entire procedural constellation, not just to the trial

---

[12] *Cf. Donnelly v. State*, 516 P.2d 396, 399 (Alaska 1973) (holding that the right to counsel extends to the initial pleading stage of applications for post-conviction relief because "[o]nly the presence of counsel will assure that meritorious claims will be fairly presented and full advantage taken of the procedures").

[13] *Shannon v. State*, 1995 WL 17220757, at *1-2 (Alaska App. Mar. 29, 1995) (unpublished) (concluding that the right to counsel for a post-judgment motion to reduce sentence "is at least as basic a right as the right to the assistance of counsel in presenting an initial application for post-conviction relief").

[14] *Id.* at *2 (Bryner, C.J., concurring).

[15] *Id.*

proper."[16] He therefore concluded that the right to counsel should apply to a timely post-judgment motion for reduction of sentence, just as it does to other parts of a defendant's criminal case.[17]

We agree with Chief Judge Bryner that the right to counsel in a criminal case necessarily extends to post-judgment motions in that criminal case. We also conclude that motions for sentencing credit are no less integral to the underlying criminal case than the motion to reduce sentence at issue in *Shannon*. Accordingly, we conclude that an indigent defendant is entitled to the assistance of counsel when litigating a post-judgment claim for credit for electronic monitoring.

We note that, in most instances, a defendant will already be represented by counsel at the time these motions are filed. Belknap's case is unusual in this regard because he was represented by private counsel at sentencing, but he apparently became unable to pay for his private counsel. The private attorney was then allowed to withdraw when Belknap filed his pro se motion for sentencing credit, apparently without any inquiry into whether Belknap was now eligible for appointed counsel.

Having determined that the superior court erred when it refused Belknap's request for appointed counsel, we now turn to the State's alternative argument that this error was harmless beyond a reasonable doubt because Belknap is not entitled to the credit he seeks as a matter of law. Belknap argues that deprivation of counsel in these circumstances can never be harmless and should be recognized as structural error.

We conclude that we need not resolve that issue here, because we conclude that there are enough questions remaining regarding the nature of the supervision

---

[16] *Id.*

[17] *Id.* at *3.

provided under the SCRAM-only monitoring to make the proper outcome of this case unclear. Although the attorneys on appeal have done an admirable job in litigating the complicated legal issues raised by Belknap's request for credit, their advocacy has necessarily been limited by the existing factual record, which does not provide a clear picture of the day-to-day supervision and GPS tracking provided by the SCRAM-only monitoring. It may be that, after consultation with counsel, Belknap has no additional facts or legal arguments to offer in support of his claim for the additional sentencing credit. But we are unwilling to conclude that Belknap's claim fails as a matter of law without giving him the opportunity to re-litigate his claim with the assistance of counsel that he was erroneously denied.

*Conclusion*

We VACATE the portion of the superior court's order denying Belknap sentencing credit for the time spent on the SCRAM-only monitoring program, and we REMAND this case to the superior court for further proceedings consistent with this decision.

Judge ALLARD, concurring.

I agree that Belknap should be given an opportunity to litigate his claim for the sentencing credit with the assistance of counsel. I write separately only to provide additional guidance on some of the legal issues presented by this case.

Belknap is correct that there is no definition of "electronic monitoring" in the statute. However, Belknap misreads the legislative history on this matter. On appeal, Belknap points to various committee minutes in which the legislature discussed, but did not decide, whether "electronic monitoring," for purposes of AS 12.55.027(d) should be restricted to the traditional steel cuff ankle monitor used by the Department of Corrections.[1] But these discussions were framed in terms of not wanting to limit the courts if there were technological advancements that could provide the same level of supervision as provided by the traditional steel cuff monitor. Thus, in those discussions, the sponsor of the bill, Rep. Tammie Wilson, explained that the bill did not include a specific definition of "electronic monitoring" because the technology kept advancing and she did not want to limit the courts in deciding which technology to use in a particular case.[2] There is nothing in those discussions to suggest that the legislature was willing to approve an electronic monitoring system that provided less supervision than the supervision provided by the traditional steel cuff ankle monitoring used by the Department of Corrections.

Instead, as the State points out, there are other discussions in the legislative history suggesting that the legislature was only interested in granting sentencing credit to

---

[1]   *See* Minutes of House Judiciary Comm., House Bill 15, Remarks of Rep. Gabrielle LeDoux and Rep. Tammie Wilson, 01:36:33-01:38:00 (Mar. 18, 2015).

[2]   *Id.*

– 11 –                                                          2610

monitoring systems that were at least as reliable and as accurate as the traditional 24-hour GPS-based steel cuff ankle monitoring system. For example, the legislature dismissed the idea that credit could be given to a person whose movements were tracked by a smart phone's GPS system.[3] The legislature concluded that such a system would not be sufficiently reliable because the defendant could easily circumvent the system by handing the phone to another person.[4]

The legislature likewise rejected an amendment proposed by Rep. Les Gara that would have extended sentencing credit to defendants who were monitored by 24-hour live third-party custodians.[5] Rep. Gara proposed this amendment because there are places in rural Alaska that do not have adequate GPS coverage to support electronic monitoring.[6] Although various legislators expressed concerns about the fact that some rural Alaskans would be excluded from the benefits of AS 12.55.027(d), the legislature ultimately rejected the amendment, concluding that third-party custodians were not as reliable as electronic monitoring and that third-party custodians could not provide the kind of instantaneous reporting of location violations that a 24-hour GPS-based system could.[7]

---

[3]  *See* Minutes of House Finance Comm., House Bill 15, Remarks of Rep. Tammie Wilson, Remarks of Rep. Lynn Gattis, Remarks of Nancy Meade, General Counsel, Alaska Court System, 02:35:49-02:45:37 (Apr. 10, 2015).

[4]  *See* Minutes of House Finance Comm., House Bill 15, Remarks of Rep. Lynn Gattis, 02:45:25-02:45:37 (Apr. 10, 2015).

[5]  Minutes of House Finance Comm., House Bill 15, Remarks of Rep. Les Gara, 02:31:14-02:31:23, 02:46:54-02:47:30 (Apr. 10, 2015).

[6]  *Id.* at 02:13:30-02:14:22.

[7]  Minutes of House Finance Comm., House Bill 15, Remarks of Rep. Tammie Wilson, 02:33:54-02:34:55; Testimony of Nancy Meade, General Counsel, Alaska Court System, (continued...)

Given this legislative history, it appears that Belknap faces an uphill battle in demonstrating that the modified SCRAM-only monitoring program was sufficiently comprehensive to qualify as "electronic monitoring" under AS 12.55.027(d). I also note that Belknap's apparent drug use while on the modified SCRAM-only program presents a separate obstacle that Belknap must also overcome before he can be found eligible for the additional sentencing credit he seeks.[8]

---

[7]  (...continued)
02:45:55-02:46:09 (Apr. 10, 2015).

[8]  AS 12.55.027(d) ("A court may grant credit against a sentence of imprisonment for time spent under electronic monitoring if the person has not committed a criminal offense while under electronic monitoring ..."); *see also State v. Bell*, __ P.3d __, Op. No. 2592, 2018 WL 1221458, at *5 (Alaska App. Mar. 9, 2018) (explaining that the State bears the burden of production regarding any alleged new criminal offenses but the defendant bears the ultimate burden of persuasion).